Good morning, Counsel. Good morning, Your Honors. May I please the Court, Alex Mashiri, on behalf of Appellant Plaintiff Freshta Nayab. I'd like to reserve two minutes of my time, if I may. Counsel, please be reminded that the time shown is your total time remaining. Thank you, Your Honor. Your Honors, there are two issues before this Court. The first issue is whether the Plaintiff has Article III standing to bring a claim under 1681BF. And the second issue is whether my client sufficiently alleged a cause of action under 1681BF. And with respect to the first issue, the District Court, sua sponte, concluded that my client, or that the Plaintiff here, does not have Article III standing. And specifically because there was no concrete harm. However, the complaint alleges that Capital One obtained my client's credit report on numerous occasions without a permissible purpose, therefore invading my client's right to privacy. As Your Honors know, a credit report contains numerous confidential information, address, name, employment, Social Security, date of birth, things like that. And so my client never authorized, or I should say Capital One never had a permissible purpose to obtain my client's credit report. So that's an invasion of privacy. That is a concrete harm, as recognized by the Ninth Circuit in Van Patten and Eichenberger, as well as in Syed. Also, invasion of privacy, intrusion upon seclusion, was recognized traditionally in American and English courts. In addition to that, Your Honors, Congress identified this harm. They identified that there's a harm of people pulling other people's credit report without a permissible purpose. So they enacted the FCRA, specifically Section 1681BF, to remedy that harm. Accordingly, Your Honors, there's Article III standing. With respect to the second issue... ...individualized harm, like somebody using her credit information, that just the mere fact that the credit was accessed is sufficient injury? Yes, Your Honor, because it's the intrusion that causes the liability here. It's the intrusion upon looking at financial information, looking at private, highly confidential information. How would you calculate damages on that injury? Right. So we can't conflate standing requirements with a cause of action. So for standing purposes, all we're focusing on is a concrete harm, and the concrete harm here is the invasion into the private information, into the confidential information. And then the FCRA, assuming you can then prove your cause of action, the FCRA then provides for... Statutory damages. I believe there's punitive damages. The statute lays it out. So Congress remedied that harm, Your Honors. Now, what do you say is your strongest case to support the argument that accessing the credit constitutes individualized harm? What case are you relying on, your strongest case? Well, Your Honor... You're standing under that context. Right. So we have Van Patten. Is Van Patten your strongest case? Well, we have Van Patten. We have Eichenberger. What's your strongest case? I would say both Van Patten and Eichenberger, Your Honor. That the intrusion to obtain, to even look at private information, that is the harm. You're invading my right to privacy. How does Spokio play into this? Well, Spokio, Your Honor, was an issue where the court said that a bare procedural allegation is insufficient. Well, there was more than a bare procedural allegation. In Spokio, the plaintiff said that he'd been represented as being older, richer, and married. And this hurt him and his reputation in the community. Right. Right? Right. So that was more a procedural issue. That was more an issue in the Supreme Court. There has to be a particularized injury and then reversed us and sent it back. Right. But they didn't reverse for insufficient allegation of the complaint. They reversed of saying the Ninth Circuit, you didn't really apply the complete test. You didn't look at the concreteness. So therefore, we're going to remand and have you, have the court look at that. And subsequently, actually, the Ninth Circuit concluded that there was a concrete harm and remanded it back, I believe, to the district court. Right. So it wasn't an issue where the allegations was insufficient. It was more the Ninth Circuit didn't apply all of the factors that the Supreme Court felt they should have done. And how does that case affect us here? Well, here we're talking about a substantive right, right? So we're talking about somebody invading your privacy. So, for example, let me give an example, Your Honor. Let's assume that prior to me coming here today, I pulled your credit report and I looked at Judge Beah's income, his address, his social security number, how much the Ninth Circuit is paying him, right? The date of public record. The other private information. And the district court is basically saying that Judge Beah has no standing to come after me for doing that. Isn't that an invasion? Aren't I invading your privacy and looking at all this private information? Why am I entitled to do that? Why do we have all of these laws? Why do we have HIPAA? But so far, if you had done exactly that, I wouldn't really feel very injured, would I? Well, that's – I don't know how you would feel. And when it did happen and it had no consequences, what would be my particularized injury? Right. Well, the consequence is the invasion itself, right? So maybe Judge Beah, maybe you don't mind somebody invading your privacy, but another person would probably not like the fact that somebody is looking at my credit report. Why do we even have Section 1681B? Why is that even there? Talk to Congress about that. But the question is Article 3 standing, right? Is it a concrete injury to have an invasion of privacy? It certainly is, Your Honor. And Van Patten said so. Eichenberger said so. Well, in Van Patten, the calls were actually received, correct? So in this case, your client didn't even know that the credit was being accessed until afterwards, correct? Well, my client found out when she pulled the credit report that the credit was accessed. In Van Patten, the calls were actually directed to the plaintiff. They came in on her phone. Right, but the issue there was the intrusion. It was intrusive because she had to either answer the calls or do something with the calls, but that's not analogous to credit being accessed and you're not even aware that it's being accessed. Well, not being aware and then you find out that somebody invaded your right to privacy. I mean, privacy is a very important issue here, and, you know, are we saying that you have no harm so the next time I look and access someone's medical records and look at medical records? Well, that's different. Well, it's an invasion of privacy. It's financial versus medical. So the credit report is sort of like a blood test. It has everything about you in the credit report. So why should someone look at anyone's credit report without a permissible purpose?  I think I did in my reply, Your Honor. Yeah, the reply brief. Yeah, I don't know if I cited my opening brief. The case may have not came out at the time. It's in your opening brief. I'm sorry? It's in your opening brief. Yeah, it is? Okay, okay. And the FCRA, Your Honors, I see that I'm out of time. No, you're not. You have a minute and 50 seconds. Well, I would like to reserve some more rebuttal. All right. But I hope I answered all the questions. Thank you, Your Honor. Thank you. Thank you. Good morning, Counsel. Good morning. May it please the Court. My name is Hunter Ely, and I'm joined by my colleague, Lloyd Vu, appearing on behalf of Defendant Appelli, Capital One Bank, USANA. Counsel touched on the Article III standing issue, but also mentioned that there's a decision by the lower court here to dismiss the case on the basis that it failed to allege sufficient facts to state a claim under 1681B of the FCRA. The matter's been fully briefed on Article III standing. The Court's obviously very well aware of the jurisprudence that's come down since Spokio. So unless the Court has specific questions for me about Article III, I would propose that I would direct my time to the... Well, I do. What's your response to opposing counsel's position that the accessing of the private information was concrete injury? Spokio tells us that we have to look beyond the pled violation to understand what the appreciable risk of harm really is. In order to do that, it's contextual. And by that I mean you have to focus in on what provision is alleged to have been violated. Groshek, from the Seventh Circuit, tells us that even under an Article III standing analysis, harm has to be plausible. Well, how about in the Ninth Circuit? What do you do with the language in Eichenberger that seems to give credence to the argument he's making? Well, the problem that I think we have is that still in this instance, we don't know specifically what right of privacy is being implicated. And the reason for that... Financial privacy. Well, the financial privacy, but even within that, Your Honor, we're focused in on Section 1681B, which talks about the permissible purpose for accessing a credit report. Within that, there are enumerated provisions, and the Court looks at which provision within that statute is actually being implicated. And I think I can... But that's after the standing determination is being made. Whether or not it's permissible is a different issue than whether or not there is even a cognizable claim being raised. I think I can clarify, Your Honor. So let's examine two different permissible purposes, and I think we can understand why the privacy interests would be vastly different in those contexts. On the one hand, a permissible purpose could be for employment-related activity or employment review. The Court in Said tells us that there are two distinct substantive rights that could reflect a concrete injury. So there's a right to information, and there's a right to privacy. Those privacy interests are vastly different than what would be implicated by, for example, prescreening. In the prescreening context, Congress went to great pains to narrow any privacy concerns and expressly stated that in order to mitigate privacy concerns, they took three specific actions for prescreening. One is they limited the amount of information that would be available to banks and creditors upon a prescreening review. That's by statute. The other thing they did is they made sure that the inquiry for prescreening would not even be visible to other creditors, also in the statute. And then thirdly, and this is perhaps most importantly for defining what the privacy interest is, thirdly, they created the right to opt out. So a consumer can opt out of having his or her credit shared with would-be creditors out in the world who are prescreening for firm offers of credit. So in this context, Your Honor, it's important to understand that the right of privacy we're talking about isn't uniform across the entire statute. It's limited and it's contextual. And the problem that we have on this case, and this is really what the Court seized on below, is that in this instance, it's not plausible. We don't know which privacy interest has been implicated because there are not facts alleged in this complaint. Well, I think the counsel is talking about a common law right of privacy which exists independent of the statute. And I take it your position is that the statute limits that common law right of privacy. Is that correct? It expressly limits it, particularly, Your Honor... So the right of privacy, as is known in common law and in England historical relations, that is no longer the right of privacy we're talking about now because Congress has enacted the FCRA. That's correct, Your Honor, and within the FCRA, our argument is that you have to be even more specific to identify which right of privacy concerns would arise. Counsel, how is plaintiff supposed to know that your client accessed it for a proper purpose? So, Your Honor, that gets into the trial court's ruling on the 12b-6 motion. And our position, Your Honor, is that the plaintiff, in this case, despite representations to the contrary, was actually in possession, custody, and control of information that would have informed her of potentially what the permissible use was that Capital One engaged in, and that is simply referring to the credit report that she had. So plaintiff alleges that in June of 2016, she obtained her Experian credit report, and that's what notified her that there had been an inquiry by Capital One into her credit. It's our position that plaintiff had an obligation to come forward with more information about that credit report. An example would be if it were a promotional inquiry, and plaintiff could have identified that just by looking at the credit report. That tells us an awful lot about what happened here. That tells us an awful lot about what the permissible use would have been. It tells us that it likely would have been for prescreening. It tells us that likely there would have been a firm offer of credit made afterwards. It also tells us all the other things about the protections I just mentioned, and that the information would have been limited. In other words, Capital One would have only seen very limited information about this individual. You're giving us hypotheticals. What happened in this case? Regrettably, Your Honor, that's part of the problem, is we don't know. There aren't sufficient facts alleged, despite those facts being in the plaintiff's possession at the time she filed the complaint. And they're not in the possession of your client? They are in the possession of my client, but my client isn't put on notice yet of what the exact harm or what the exact violation is. Well, generally, Congress created a protection here under the Fair Credit Reporting Act. And the overall rule is your credit is protected. And then it provided exceptions. Typically, in pleading standards, exceptions are affirmative defenses by your client, by the defendant. So why shouldn't you have the burden of proving an affirmative defense for the exceptions that appear in the statute? There are two reasons for that, Your Honor. First is that the authority cited by plaintiff and appellant here for that proposition is an opposite to this case, and I'll get into that. The second reason, Your Honor, is that that proposed interpretation runs contrary to the express language, legislative intent, and sound policy considerations that attend the Fair Credit Reporting Act. Ivankovic is an opposite in this instance for two specific reasons. Number one is that case, and by the way, this is the centerpiece of plaintiff's burden-shifting argument. That case dealt only with the Fair Debt Collection Practices Act, has no mention whatsoever of what a viable pleading standard should be under the Fair Credit Reporting Act. That's reason number one. Reason number two is the statute that's at issue in Ivankovic, it deals with an entirely different structure. So that statute was a two-tiered exception, beginning with the words except as provided in section 1692B. You simply cannot lay that on top of 1681B here under a completely different statutory regime and have an apples-to-apples comparison. So, Your Honor, Ivankovic is an opposite, doesn't apply to this case. With respect to policy considerations, and I realize I'm running out of time, I'll be very brief, I think there are two things that the Court needs to take away. Number one is that Congress, the legislature was explicit when it said that it sought to provide recourse for unlawful access of credit reports. Not any access of credit reports. Congress also clarified that it intended to create a benefit to consumers through the sharing of this information. So if Congress were to open the floodgates and allow anybody to sue merely because someone accessed their credit reports, which, by the way, Congress recognized happens continuously, it would do great harm. It would eviscerate the very benefit that Congress sought to confer back to the consumers. And with that, Your Honor, I'm out of time. If there are no further questions, we thank you and request that the trial court's ruling be affirmed. Thank you. Thank you, Your Honors. A couple things. First, counsel was stating to the Court that the plaintiff has knowledge as to why the credit report was obtained. That's not true, Your Honor. The credit report, I submit to the Court that the credit report that we have does not show the purpose of the polling as to why the report was polled, number one. Number two, pre-screening is a permissible purpose, okay, which the defendant has to show here. Now, if the defendant, you know, we never got to that issue. We got dismissed. The case got dismissed at the pleading stage. So whether there was pre-screening or not, we don't know. We don't have any information why this credit report was accessed. Now, if the defendant claims that it was for pre-screening or anything else, that burden is on them to bring facts to the front of the district court to say, look, we had a permissible purpose. But right now, the case is so premature, it got dismissed at the pleading stage. It's not premature for you not to be able to allege an impermissible purpose, is it? Well, we can allege. Why do you think they invaded your client's privacy? Did they have a purpose of defrauding her in some way? Well, we don't have to show defraud, Your Honor. You have to allege an impermissible purpose. Right. And so if you look at this, well, we don't have to allege an impermissible purpose. You think that as long as you allege what are the permissible purposes and then say their purpose is none of this. Sorry. Don't we have to go beyond that and say but their purpose was this? Well, we don't need to allege that, Your Honor, because if you look at the plain language of the statute, it says that the general rule of liability is as follows. A person shall not use or obtain a consumer report for any purpose unless, unless it's an indicator of an affirmative defense. Turgamon versus Nelson-Kennard, which we submitted a Rule 28J letter, stands for that proposition. Following the unless are the exceptions to the general liability, rule of liability, the exceptions. And the exceptions benefit Capital One. And we know that the rule of law is that when an exception benefits the person claiming the exception or claiming the benefit of the exception, that person has the burden of proof. That's Supreme Court precedent. That's Ninth Circuit precedent. Counsel, may I ask you, are you familiar with our recent decision in Dutta versus State Farm? Yes, I am. So it appears that in that case, we said that in addition to alleging the statutory violation, to confer a standing, there has to be some concrete harm. And in this case, it appears that we gave, as an example, that identity theft was suffered as a result of the improper invasion of privacy. Why shouldn't we have a similar requirement in this case? Because, Your Honor, the invasion itself, the intrusion itself is the harm here. That's a substantive right. But Dutta seems to say that's not enough. Well, Dutta wasn't an invasion of privacy issue where the report was obtained. It was an invasion of privacy issue in the sense that the entire credit card number was printed out on the receipt. So that was the invasion of privacy. Other people could see the entire credit card number. And it seemed there that we said that's a technical violation, but there is no concrete injury that came after that. Right. So let me just explain what the difference is. In that particular case, I believe the plaintiff voluntarily gave the information to the defendant, and then defendant printed out a receipt with the expiration date or the credit card date. But you see how that's different from our case? It's not different in the injury, in analyzing what the injury is. Well, we do because the information, right, if I personally, in that case, the plaintiff voluntarily gave the information to the defendant. Okay, that's volunteer. And then the defendant had to then do something where the information is disclosed to an unauthorized third party, whether the ticket gets lost, whether there's a data breach. But the distinction here is that in our case, plaintiff never gave the credit report to Capital One. So that step is the invasion. The company never invaded the plaintiff's right to privacy, and the plaintiff couldn't show that this information was fallen to the hands of an unauthorized third party to invade. Your client didn't show that either, that it fell into the hands of an unauthorized third party. Well, my client doesn't need to. As soon as Capital One looks at the credit report, that's the invasion of privacy. My client doesn't need to show, oh, Capital One took the report and gave it to a third party. We don't need to do that because it's Capital One that's invading the privacy. Well, that's the same argument that was made in Dutta, that the fact that the entire number was shown was the invasion of privacy and nothing more needed to be shown. That's why I'm curious about what your response is. Well, what happened there is that the plaintiff voluntarily gave his information to the defendant. The defendant had the information, and the defendant didn't disclose the information to a third party other than the plaintiff himself. That's the distinction. So here, we don't have that. Capital One invaded my client's right to privacy. Thank you, counsel. We understand your argument. Thank you. Thank you to both counsels. The case is submitted for discussion.
judges: Rawlinson, Bea, Rice